**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000102
31-MAR-2014
08:49 AM**

NO. CAAP-10-0000102

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

NORMAN SAMSON and FRANCINE SAMSON, Individually,
and as Guardian Prochein Ami of KU'ULEILANI SAMSON, a Minor,
Plaintiffs-Appellants,
v.
NOLA ANN NAHULU, Defendant-Appellee.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-0171)

MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

Plaintiffs-Appellants Norman Samson (Father) and
Francine Samson (Mother), Individually and as Guardians Prochein
Ami of Ku'uleilani Samson (Daughter) (collectively referred to as
the Samsons), appeal from a Judgment, entered on August 9, 2010,
and an "Order Denying Plaintiffs' Motion for Judgment
Notwithstanding the Verdict and/or, In the Alternative, for New
Trial" entered on September 29, 2010, in the Circuit Court of the
First Circuit (circuit court).[1]  This case arises from an
accident wherein a vehicle operated by Defendant-Appellee Nola
Ann Nahulu (Nahulu) struck Daughter as Daughter crossed
Farrington Highway on foot.  The Judgment was entered after a
jury returned a Special Verdict on June 10, 2010, in favor of
Nahulu and against the Samsons.

On appeal, the Samsons assert that the circuit court
erred by (1) denying admission of a photograph of the accident

---

[1] The Honorable Rom A. Trader presided.

scene, Plaintiffs' Exhibit 7, that showed markings made or authorized by witness McKenna Benson (Benson); (2) barring Benson from testifying that Nahulu was going "too fast for the conditions" and witness Paul Day (Day) from testifying that Nahulu was traveling at "an unsafe speed"; (3) allowing Nahulu's expert witness, Wayne Slagle (Slagle), to give unreliable and speculative opinion testimony; (4) admitting and allowing Slagle to testify about opinions that were not disclosed to the Samsons prior to trial; and (5) giving certain jury instructions (Nahulu's proposed instructions 1, 2, and 6, as modified) and failing to give an instruction requested by the Samsons (Plaintiffs' proposed instruction 12).

For the reasons stated below, we affirm.

## I.  Discussion

### A.  Exhibit 7 and Related Testimony

The parties dispute whether Daughter was in a crosswalk at the time of the accident.  Daughter testified at trial that, after waiting for her friend to get on a bus, she walked alongside Farrington Highway, looked both ways, and then entered the road at a crosswalk in front of the bus.  To the contrary, based on conflicting testimony from witnesses to the accident, Nahulu claims that Daughter entered the road quickly from right in front of the bus, walking diagonally across the road, and was not in a crosswalk when she was struck.

The Samsons contend the circuit court abused its discretion when it excluded Plaintiffs' Exhibit 7, a photograph of the accident scene that the Samsons assert had markings made or authorized by Benson[2] depicting the point of impact in the middle of a crosswalk on Farrington Highway.  The Samsons argue Exhibit 7 was not prejudicial and/or the threat of prejudice was

_____

[2]  On July 4, 2005, Daughter was struck by Nahulu's vehicle as Daughter was crossing Farrington Highway near the Jade Street intersection.  Nahulu was driving toward Honolulu.  The parties do not dispute that for the Honolulu-bound lane, there is a bus cut-out on the side of the road for buses to service passengers, that at the time of the accident two buses were using the cut-out, and that somewhere in front of the first bus was a marked crosswalk.  Benson was the driver of the front bus in the cut-out, but he does not recall a crosswalk.

outweighed by its probative value, thus the circuit court had a duty to receive the relevant evidence related to a key factual issue. Further, the Samsons contend the circuit court erred when it concluded a limiting instruction would not cure any potential unfair prejudice. Finally, the Samsons contend the circuit court erred when it precluded Benson from testifying at trial that, assuming there was a crosswalk as depicted in a different copy of the photograph,[3] it is more likely than not that Daughter was struck in the crosswalk.

During trial, the circuit court ruled Exhibit 7 and its contents inadmissible as offered through Benson. The circuit court based this ruling on Benson's lack of personal knowledge as to whether the accident occurred in a crosswalk and his inability to verify the accuracy of the photograph (related to both the layout of the scene and the location of a "X" in the crosswalk).[4] The circuit court explained that the unfair prejudice generated by Exhibit 7 substantially outweighed its probative value because the photograph depicted the collision occurring in the crosswalk despite Benson's testimony that he could not state whether in fact the collision was in a crosswalk. The court rejected the Samsons' proposal for a limiting instruction because the court feared the jury could not ignore the fact that Exhibit 7 indicated the point of impact in the crosswalk. The court then noted that nothing prevented the Samsons from using a different photograph and Benson's testimony to establish the point of impact based on his personal knowledge.

---

[3] By agreement of the parties, a different copy of the photograph, without the "X"s, was received into evidence as Plaintiff's Exhibit 3-B prior to Benson's testimony.

[4] During trial, the circuit court held a Hawaii Rules of Evidence (HRE) Rule 104 (1993) hearing on the admissibility of Exhibit 7. Benson testified that he could not recall a marked crosswalk on the day of the accident as depicted in Exhibit 7, and thus could not state that Exhibit 7 accurately depicted the area at the time of the accident, nor could he testify that the collision occurred in the crosswalk. Benson further testified that he made one of the markings (an "X") on the photograph, indicating where the front of his bus was stopped, but not the other "X" located in the crosswalk, which purportedly indicated the point of impact. Benson did acknowledge that the second "X" marked the spot he pointed to during his deposition to indicate "about" where Daughter was struck, assuming there was a crosswalk at the time.

3

> The admissibility of evidence requires different standards of review depending on the particular rule of evidence at issue.

> > When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

> . . . An abuse of discretion occurs when the court "clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant."

State v. Cordeiro, 99 Hawai'i 390, 403-04, 56 P.3d 692, 705-06 (2002) (internal citations omitted).

The circuit court ruled that the danger of unfair prejudice substantially outweighed the probative value of Exhibit 7. Hawaii Rules of Evidence (HRE) 403 (1993). "[A] trial court's balancing of the probative value of . . . evidence against the prejudicial effect of such evidence under HRE Rule 403 . . . is reviewed for abuse of discretion." Cordeiro, 99 Hawai'i at 404, 56 P.3d at 706.

Benson was not able to provide foundation testimony or other proof that Exhibit 7 was a substantially accurate representation of the accident scene as required by HRE Rule 901 (1993).[5] See HRE Rule 901, cmt. Benson stated he could not testify that the incident occurred in a crosswalk. Further, Benson testified that he could not say Exhibit 7 accurately depicted the area at the time of the accident. Based on Benson's testimony, the circuit court did not abuse its discretion in determining that the prejudicial effect of Exhibit 7 substantially outweighed its probative value. See State v. Sequin, 73 Haw. 331, 338, 832 P.2d 269, 273 (1992) (holding that

---

[5] HRE Rule 901 provides:

> **Rule 901 Requirement of authentication or identification.** (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

4

the trial court did not abuse its discretion when it excluded a photographic exhibit that the court determined could mislead the jury because *inter alia* witnesses could not verify its accuracy).

In regard to the Samsons' argument that the circuit court should have admitted Exhibit 7 and utilized a limiting instruction, the circuit court had discretion to weigh the potential for unfair prejudice. "[W]here the danger of the jury's misuse of the evidence for the incompetent purpose is great, and its value for the legitimate purpose is slight . . . the judge's power to exclude the evidence altogether would be recognized." HRE Rule 105, cmt. (1993) (citation omitted). Here, the circuit court determined that there was great potential the jury would not be able to look past the fact that the second "X" was located in the crosswalk. The circuit court did not abuse its discretion in denying the use of a limiting instruction. See State v. Palisbo, 122 Hawai'i 546, 229 P.3d 364, No. 29133, at *9 (App. Apr. 20, 2010) (mem.) ("[T]he trial court has considerable discretion in determining whether and when to issue a limiting instruction." (citing Cordeiro, 99 Hawai'i at 418-19, 56 P.3d at 720-21)).

Similarly, the circuit court did not err in precluding the Samsons from asking Benson whether it was more likely than not that Daughter was struck in the crosswalk, if there was a crosswalk at the time of the collision, as depicted in a photograph similar to Exhibit 7 but without the "X" markings. The circuit court sustained Nahulu's objection that there was no foundation to permit such testimony, again because Benson could not say whether there was a crosswalk at the accident scene. The court noted that the Samsons could elicit testimony from Benson about how far away he estimated the point of impact to be, but that having Benson place the point of impact in the crosswalk when he could not say there was a crosswalk was problematic.

"When a question arises regarding the necessary foundation for the introduction of evidence, the determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be

overturned absent a showing of clear abuse." State v. Eid, 126 Hawaiʻi 430, 440, 272 P.3d 1197, 1207 (2012); see First Ins. Co. of Hawaii, Ltd. v. Int'l Harvester Co., 66 Haw. 185, 192-93, 659 P.2d 64, 69 (1983).  Benson testified he could not remember a crosswalk at the scene, but the Samsons sought to have Benson testify that the impact occurred in the crosswalk depicted in the photograph.  The circuit court did not abuse its discretion in ruling that there was a lack of foundation for such testimony.

Therefore, the circuit court did not err in excluding Exhibit 7 and the related testimony that the Samsons claim should have been allowed.

### B.  Lay Witness Testimony

The Samsons argue the circuit court abused its discretion when it precluded Day and Benson from testifying, respectively, that Nahulu was traveling at "an unsafe speed" or "too fast."[6]  The Samsons contend the proposed testimony is admissible pursuant to HRE Rules 701 and 704 (1993).

Prior to trial, the circuit court granted in part Nahulu's motion in limine no. 6 that precluded all opinion testimony by lay witnesses as to whether Nahulu complied with traffic laws, including testimony that she was traveling "too fast" or at an "unsafe speed," but permitted lay witnesses to testify regarding their personal observations.  The circuit court also granted Nahulu's motion in limine no. 5 that precluded any and all questions to and testimony by lay witnesses concerning the ultimate issue of Defendant's alleged negligence.  Based on its in limine rulings, the circuit court declared that testimony to the effect that Nahulu was driving "too fast for the conditions" was tantamount to opinion testimony that Nahulu was negligent.  Similarly, the circuit court ruled that Day's testimony that Nahulu's speed was "unsafe" would not be permitted

---

[6]  On appeal, the Samsons point to Day's deposition testimony that Nahulu was driving at an "unsafe speed," and also refer to potential testimony from Benson that Nahulu was traveling "too fast for the conditions."

because it calls for a legal conclusion. The Samsons challenge these specific rulings.

The Samsons contend *inter alia* that the circuit court erred because opinion testimony by a lay witness is permissible pursuant to HRE Rule 701,[7] and moreover, "[t]estimony in the form of an opinion or inference *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." HRE Rule 704 (emphasis added).

As to the purported testimony that Benson would have given, Benson's deposition testimony was *not* that Nahulu was traveling "too fast for the conditions," and in fact Benson refused to say that on the record.[8] Thus, it was not Benson's opinion and we need not decide if it was admissible.

As to Day's proposed testimony, he did testify at his deposition that Nahulu was "traveling at an unsafe speed." This testimony was based on Day's personal observations[9] and may have been helpful to the jury in its determination of a fact in issue. See Am. Broad. Cos. v. Kenai Air of Hawaii, Inc., 67 Haw. 219, 230, 686 P.2d 1, 8 (1984). It was thus admissible opinion testimony by a lay witness pursuant to HRE Rule 701.

---

[7] HRE Rule 701 provides:

> **Rule 701 Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

[8] Benson testified at his deposition: "I couldn't tell you if she was going too fast. It all depends on everybody's reaction time and judgment. She could have been driving as fast as she thought and been in well within her reaction time, to her knowledge. I do not know." He continued: "Ah, I couldn't tell you the exact answer. I couldn't give you a yes or no, definite answer."

[9] Although Day admitted he could not estimate how fast the car was traveling in terms of miles per hour, he testified that Nahulu's car was within his line of sight. He perceived the events.

Moreover, the Samsons argue that under HRE Rule 704,[10] the circuit court erred in excluding Day's purported testimony on the grounds that it embraced the ultimate issue, Nahulu's alleged negligence.

> While witnesses may be permitted, in a proper case, to give an opinion on an ultimate *fact* involved in the case, there is a strong consensus among the jurisdictions, amounting to a general rule, that witnesses may not give an opinion on a question of domestic law or on matters which involve questions of law. The fundamental problem with testimony containing a legal conclusion is that conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury amounts to a usurpation of the court's responsibility to determine the applicable law and to instruct the jury as to that law. Expert as well as nonexpert witnesses are subject to the prohibition against testifying as to a question of law.

Create 21 Chuo, Inc. v. Sw. Slopes, Inc., 81 Hawai'i 512, 522 n.4, 918 P.2d 1168, 1178 n.4 (App. 1996). The witness is not permitted to give opinion testimony that "would merely tell the jury what result to reach[,]" or be "phrased in terms of inadequately explored legal criteria." HRE Rule 704, cmt.; see State v. Ryan, 112 Hawai'i 136, 141, 144 P.3d 584, 589 (App. 2006).

In our view, Day's purported testimony that Nahulu was traveling at an unsafe speed concerned a factual issue and was admissible. "It is well-established that, in order for a

---

[10] HRE Rule 704 and relevant commentary to the rule provide:

> Rule 704. Opinion on ultimate issue. Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
>
> RULE 704 COMMENTARY This rule is identical with Fed. R. Evid. 704. It abolishes the common-law rule disallowing testimony upon an "ultimate issue" in the case of trial.
>
> . . .
> Prior to the adoption of this rule Hawaii adhered to the "ultimate issue" exclusion, see Friedrich v. Department of Transportation, 60 H[aw.] 32, 586 P.2d 1037 (1978); Sherry v. Asing, 56 H[aw.] 135, 147, 531 P.2d 648, 657 (1975); Cozine v. Hawaiian Catamaran, Ltd., 49 H[aw.] 77, 412 P.2d 669 (1966).
> The abolition of the "ultimate issue" rule does not leave the court without safeguards. First, the present rule requires that the testimony be "otherwise admissible." Second, under the limitations of Rules 701 and 702 supra, opinion testimony must be helpful to the trier of fact. . . . .

8

plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages." Cho v. State, 115 Hawaiʻi 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) (citation omitted). Day's purported testimony only serves as evidence relevant to breach of a duty, and does not tell the jury what to infer from the evidence or usurp the role of the judge to provide the law. Day did not propose to testify to a question of law regarding whether there was a duty and the nature of that duty, which is to be defined by the trial judge. Any issues related to Day's definition of unsafe, and the fact that Day admits he could not estimate the rate of speed could have properly been explored during cross-examination.

Although we conclude it was error to preclude Day's purported testimony that Nahulu was traveling at an unsafe speed, the circuit court's error was harmless. "Courts have consistently held that the improper exclusion of competent testimony constitutes harmless error where essentially the same evidence is established by the testimony of other witnesses or by other means." Kekua v. Kaiser Found. Hosp., 61 Haw. 208, 219, 601 P.2d 364, 371 (1979). Day's deposition testimony was that Nahulu's car came "around the bus at a good speed, . . . was traveling at an unsafe speed and hit the girl hard." Day could not provide an estimate as to rate of speed. During trial, Day testified that Nahulu's car was traveling "at a speed where it couldn't stop in time[,]" and skidded about eight feet. Day further testified that "[w]hatever the speed was, it was fast enough to cause that damage and it was fast enough to send that girl up in the air it hit so hard." Day then described how Daughter flew between fifteen and twenty feet after the collision. The Samsons also read from Day's deposition that he saw Nahulu "come around the bus at a good speed." Day also noted to the jury that when he saw Daughter begin to cross in front of the bus, he slowed down because he "was driving at a safe speed." Therefore, Day provided testimony to the jury relevant to breach of duty, without using the word "unsafe."

Additionally, Benson testified that upon collision, Daughter "got sent" probably twenty feet and the car came to a stop about ten feet from Daughter. The Samsons' counsel also read from Benson's deposition that Nahulu's car was "going fast enough that it took 40 feet to stop after she had hit that girl[.]"

Therefore, there was other evidence presented to the jury that Nahulu may have been driving at an unsafe speed.

## C. Nahulu's Expert Witness

The Samsons contend the circuit court abused its discretion in permitting Nahulu's expert witness, Slagle, an accident reconstructionist, to testify regarding (1) unreliable and unsubstantiated opinions on the point of impact and Nahulu's reaction time, and (2) undisclosed opinions.

In applying HRE Rule 702 (1993),[11] trial courts must determine whether expert testimony is relevant and reliable. Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 117, 58 P.3d 608, 628 (2002). The Samsons do not dispute the relevance of Slagle's testimony, but challenge its reliability. We review a trial court's determination as to reliability, as well as generally whether to admit expert testimony, for abuse of discretion. Id.

### 1. Point of Impact and Reaction Time

The Samsons argue that the circuit court abused its discretion by improperly allowing Slagle to testify that the impact occurred outside of the crosswalk based solely on the testimony of Benson. They contend on appeal that it is

---

[11] HRE Rule 702 provides:

> Rule 702 Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

"inherently unreliable" for an accident reconstructionist to calculate point of impact based solely on bystander testimony, citing to State v. Pauline, 100 Hawai'i 356, 60 P.3d 306 (2002) and the commentary to HRE Rule 703 (1993)[12] for the proposition that reliance on bystander testimony renders an accident reconstructionist's conclusion on point of impact an "unsupported assumption" that would not aid the trier of fact.

In his report, Slagle concluded "[t]his accident is most consistent with the pedestrian crossing close to the bus and outside the crosswalk." In support of their motion in limine seeking to exclude Slagle from testifying at trial, the Samsons did *not* argue that Slagle's conclusions were inadmissible because of his reliance on Benson's testimony. The Samsons argued Slagle's conclusion regarding point of impact violated rules of evidence which prohibit witnesses from giving opinions that instruct the jury on what result to reach on a factual issue. Even when requesting a HRE Rule 104 (1993) hearing on Slagle's opinions, the Samsons did not challenge Slagle's point of impact opinion testimony based on his alleged reliance on Benson's testimony. Thus, the argument that the Samsons now raise on appeal has been waived.

Moreover, even if their argument was not waived, Slagle did not rely solely on Benson's testimony in rendering his opinion as to point of impact. In his report, Slagle states that he inspected, measured and photographed the scene, and also reviewed the police report (noting "[t]he police report suggests that the impact occurred outside the crosswalk"), aerial photographs, the depositions of the eyewitnesses, the

---

[12]   HRE Rule 703 provides:

> **Rule 703 Bases of opinion testimony by experts.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court may, however, disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

interrogatories of the parties, the Samsons' pre-hearing statement, statements given by eyewitnesses, and photographs taken after the incident. The Samsons' challenge to Slagle's point of impact opinion therefore lacks merit.

The Samsons further assert that Slagle drew self-serving conclusions unsupported by Benson's testimony and contrary to conflicting evidence of point of impact. These concerns go more properly to the weight, not the admissibility, of Slagle's testimony. See State v. Kanamu, 107 Hawai'i 268, 271, 112 P.3d 754, 757 (App. 2005) (stating that an appellant's argument *inter alia* that other possible explanations exist contrary to the conclusions of the expert go to the weight, not the admissibility, of the expert's opinion). Selective choice of facts and problematic conclusions are to be explored during cross-examination. See HRE Rule 702.1(a); State v. Wilson, 120 Hawai'i 48, 200 P.3d 417, No. 28478, at *25 (App. Jan. 7, 2009, as amended Apr. 14, 2009) (mem.) ("In the name of efficiency, [Federal Rules of Evidence] Rules 703 and 705 shift the burden to the cross-examiner to reveal the bases of an expert's opinion and the deficiencies therein.").

Finally, the Samsons assert that Slagle's conclusion that Nahulu only had one second to react was based on speculation and assumption of variables. Again, the Samsons' concerns with the conclusion drawn by Slagle goes to the weight, not the admissibility, of the opinion. Slagle was subject to cross-examination such that the Samsons could demonstrate to the jury any problematic assumptions being drawn by Slagle and the effect on his analysis of other potential fact scenarios. See Kanamu, 107 Hawai'i at 271, 112 P.3d at 757; State v. Freitas, 62 Haw. 17, 23, 608 P.2d 408, 412 (1980).

Thus, the circuit court did not abuse its discretion in allowing Slagle to testify regarding the point of impact and Nahulu's reaction time.

## 2. Undisclosed Opinion

The Samsons allege that certain opinions rendered by Slagle were based on a photograph and methodology not disclosed

prior to trial.  Specifically, the Samsons allege that Slagle's opinions were based on a photograph that was not Plaintiffs' Exhibit 6 as represented by Nahulu's counsel, but a blow-up of Exhibit 6.[13]  Additionally, the Samsons assert Nahulu failed to disclose Slagle's opinions regarding specific distances based on the photograph, as well as his methodology utilizing a manhole cover in the photograph for determining the location of the crosswalk at the time of the accident.

The Samsons produced Exhibit 6 after the discovery cut-off in this case and after Slagle's deposition.  After receiving it, Nahulu's counsel apparently had Exhibit 6 enlarged, which is the photograph that was shown to the jury during Slagle's testimony at trial.  The Samsons do not challenge on appeal the admissibility of the photograph, but rather Slagle's use of it at trial.  Because Exhibit 6 was not produced by the Samsons until after Slagle's deposition, it is understandable that he would not have previously rendered an opinion based on Exhibit 6.  The Samsons' contentions regarding Slagle's use of the enlarged Exhibit 6 at trial are thus without merit.

As to Slagle's methodology regarding distances, the Samsons fail to establish that Slagle did not disclose his methodology prior to trial.  Rather, as Nahulu argues, Slagle's method of using the manhole cover to determine the location of the crosswalk was discussed and disclosed during his deposition.  Slagle's methodology was not a surprise to the Samsons.  The Samsons have failed to demonstrate the circuit court abused its discretion.

---

[13] Exhibit 6 is an aerial photograph of the accident scene taken in 2000 with a scale drawn on it.  The accident occurred in 2005.  Between 2000 and 2005, the crosswalk was restriped.  During direct examination, Nahulu's counsel represented he was showing Slagle Exhibit 6, which was already in evidence.  After the court asked if the photograph being displayed was in fact Exhibit 6 or a copy, counsel corrected his representation and stated it was a blown up copy of Exhibit 6.  The Samsons' counsel objected because the blow-up had a black mark on it not present in Exhibit 6.  The court overruled the objection.

## D.  Jury Instructions

The Samsons contend that three of the given jury instructions were erroneous articulations of the law and unwarranted by the evidence.  Additionally, the Samsons argue the court improperly failed to give an instruction that they contend correctly states that drivers must exercise greater caution to avoid collisions than pedestrians.

Nahulu counters that the instructions given correctly summarized the law relevant to the factual evidence adduced at trial, while the omitted proposed instruction was an inaccurate statement of law because it imposes a higher duty of care upon a driver beyond that of ordinary care and was contrary to other instructions.

> "The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286, 297, 141 P.3d 459, 470 (2006) (internal quotation marks and citation omitted).  Generally, instructions that are found to be an erroneous articulation of the law raise a presumption that they were harmful. *Turner v. Willis*, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978).  The presumption can be overcome however, if it "affirmatively appears from the record as a whole that the error was not prejudicial." *Id.*
>
> . . . Refusing to give an instruction relevant under the evidence that correctly states the law is an error if the point has not been adequately and fully covered by other instructions. *Sherry v. Asing*, 56 Haw. 135, 144, 531 P.2d 648, 655 (1975).

Udac v. Takata Corp., 121 Hawai'i 143, 149, 214 P.3d 1133, 1139 (App. 2009).

The three instructions that were given and that the Samsons challenge are:

> [Nahalu's proposed instruction 1]  A pedestrian is required to obey all traffic laws which are applicable to her.
>
> [Nahalu's proposed instruction 2]  A pedestrian who crosses a roadway outside of a crosswalk is required to yield the right of way to all vehicles upon the roadway.
>
> [Nahalu's proposed instruction 6, as modified]  A person traveling upon a highway has a right to assume

14

that all other persons using the highway will obey the
law and that one is not bound to keep a lookout for
others who may violate the law applies only to those
cases where the automobile is being driven in
conformity to the law and not in violation thereof, and
it has no application where the automobile is being
driven in a negligent manner.

**1. Nahulu's Proposed "Instructions 1 and 2"**

The Samsons contend Instruction 1 is not a proper
statement of the law because it imposed an affirmative obligation
on Daughter to obey traffic laws that is absent from the relevant
statute. The Samsons contend Instruction 2 is an inaccurate
statement of the law because it ignores the possibility that one
may eventually enter a marked crosswalk as they traverse the
roadway. Regarding both, the Samsons contend they are
"untempered by negligence principles or other circumstances."
Further, the Samsons contend Instructions 1 and 2 suggest that
violation of an "affirmative obligation" was negligence *per se* or
a complete bar to recovery.

Both Instructions 1 and 2 are accurate reflections of
the law. Instruction 1 is based on Hawaii Revised Statutes (HRS)
§ 291C-71 (2007).[14] This statute states that a pedestrian must
obey traffic control devices and "[a]t all other places,
pedestrians shall be accorded the privileges and shall be subject
to the restrictions stated in" the statewide traffic code.
Therefore, HRS § 291C-71 supports Instruction 1. Similarly,
Instruction 2 is close to the language of HRS § 291C-73 (2007),
which provides in pertinent part that "[e]very pedestrian

_____

[14] HRS 291C-71 provides in pertinent part:

> **[§291C-71] Pedestrian obedience to traffic-control**
> **devices and traffic regulations.** (a) A pedestrian shall obey
> the instructions of any official traffic-control device
> specifically applicable to the pedestrian, unless otherwise
> directed by a police officer.
> (b) Pedestrians shall be subject to traffic and
> pedestrian-control signals as provided in sections 291C-32
> and 291C-33.
> (c) At all other places, pedestrians shall be accorded
> the privileges and shall be subject to the restrictions
> stated in this chapter.

crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." HRS § 291C-73 thus supports Instruction 2.

The Samsons' argument that Instructions 1 and 2 are erroneous and prejudicial because they ignore that drivers must exercise due care in avoiding collisions with pedestrians upon a roadway is without merit. When read as a whole, the jury instructions did instruct that Hawaiʻi law requires a driver to exercise due care with regard to pedestrians. The jury was instructed that

> Hawaii law requires that every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the driver's horn when necessary and shall exercise proper precaution upon observing any child or any obviously confused or incapacitated person upon a roadway.

The jury was also instructed that a driver is required to yield to any pedestrian in a marked crosswalk. Further, the circuit court instructed the jury that

> [t]he duty to observe ordinary care requires that a driver of an automobile must anticipate the possibility of meeting pedestrians or other vehicles at street crossings and have his or her automobile under such control as may be necessary to avoid colliding with a pedestrian on the roadway.
>
> . . .
>
> Consistent with the foregoing, it is the law in Hawaii that every person shall drive at a safe and appropriate speed when approaching and crossing an intersection and when special hazards exist with respect to pedestrians or other traffic regardless of the posted speed limit.
> A motorist's failure to observe these requirements that results in a collision with a pedestrian is negligence.

From the jury instructions as a whole, the circuit court properly instructed the jury on a driver's obligation to drive with due care.

The Samsons' argument that Instructions 1 and 2 imply negligence *per se* or a complete bar to recovery is also without merit. Prior to giving Instructions 1 and 2, the circuit court instructed the jury that

> [t]he violation of a state or city law is evidence of negligence, but the fact that the law was violated is not sufficient, by itself, to establish negligence. The

16

> violation of the law must be considered along with all the other evidence in this case in deciding the issue of negligence.

> Whether there was a violation of a state or city law is for you to determine.

The Samsons also argue that Instruction 2 is erroneous because a court should not repeat mandatory and unqualified language from a statute that might cause the jury to focus on the one statute and not consider all of the facts of the case, citing to Radford v. Morris, 52 Haw. 180, 186, 472 P.2d 500, 504 (1970). In Radford, the Hawai'i Supreme Court admonished the trial court for reading part of the traffic code verbatim to the jury, and the court instead advised relating the applicable law to the jury in a less formal manner. Id.; see Armstrong v. Cione, 6 Haw. App. 652, 661-62, 736 P.2d 440, 447 (1987). Instruction 2 properly sets forth the law under HRS § 291C-73 in an easily understood manner consistent with Radford.

It was not erroneous or prejudicial to give Instructions 1 and 2.

### 2. Nahulu's Proposed "Instruction 6 (as Modified)"

The Samsons contend Instruction 6, as modified by the circuit court, is both incomprehensible and a misstatement of the law. Specifically, the Samsons contend the instruction is clearly erroneous because the instruction is an attempted quote from a judicial opinion, is missing the clause at the beginning that frames the entire instruction, misapplies the precedent from which it is quoting, improperly assigns a right that may confuse the jury in determining negligence, and does not, by its terms, apply to vehicle-pedestrian collisions.[15] Thus, the Samsons contend that it was error to give Instruction 6.

The legal proposition that Instruction 6, as modified, seeks to set forth is not an erroneous articulation of the law,

---

[15] The Samsons' argument that HRS § 291C-74 (2007) precludes Instruction 6 is without merit. The statute provides that a driver must exercise due care to avoid hitting pedestrians. Instruction 6 similarly provides that a driver must exercise due care at all times as well. Once a driver operates a vehicle in a negligent manner, the driver is not afforded the "right" stated in Instruction 6.

17

but the instruction as given was grammatically incorrect. The instruction was taken from a quote in <u>State v. Arena</u>, 46 Haw. 315, 331, 379 P.2d 594, 604 (1963) (quoting <u>Cushing Refining & Gasoline Co. v. Deshan</u>, 300 P. 312, 317 (Okla. 1931)), but part of the quote appears to have been inadvertently left out.[16] Notwithstanding the grammatical error, the Samsons fail to show this instruction had any detrimental effect on them. <u>See</u> <u>New York Life Ins. Co. v. Rogers</u>, 126 F.2d 784, 787 (9th Cir. 1942) (holding that an instruction was vague given its wording, but there was no apparent prejudice to the appellant). Here, the grammatical error was not prejudicial to the Samsons. If anything, Instruction 6 is more helpful to Nahulu, and thus its vagueness is to Nahulu's detriment. Moreover, Instruction 6 provides that a negligent driver is not afforded the right to expect others to obey the law. The Samsons' burden at trial, to prove that Nahulu was negligent, thus remained the same regardless of Instruction 6.

Next, the Samsons contend that a jury instruction cannot be framed from a judicial opinion, citing <u>Cozine v. Hawaiian Catamaran, Ltd.</u>, 49 Haw. 77, 87, 412 P.2d 669, 678 (1966). However, <u>Cozine</u> merely suggests that not all language from a judicial opinion is an accurate reflection of the law because selective quotation may omit the realities of the court's decision. <u>See</u> <u>id.</u> at 87 n.5, 412 P.2d at 678 n.5 ("It is not every statement of the law found in a text-book or opinion of a judge, however well and accurately put, which can properly be embodied in an instruction." (quoting <u>Territory v. Cutad</u>, 37 Haw. 182, 186 (Haw. Terr 1945))). Here, if properly quoted, the instruction would have accurately reflected the law as set forth in <u>Arena</u>. We note that one of the Samsons' proposed instructions

_____

[16] The jury instruction omits the first clause of the language contained in <u>Arena</u>: "The rule that a person traveling . . . ." 46 Haw. at 331, 379 P.2d at 604. It appears that the first portion was omitted because, as originally proposed by Nahulu, the instruction stated, "[a] person traveling upon a highway has the right to assume that all other persons will obey the law and is not required to keep a lookout for others who violate the law." The circuit court subsequently added the remainder of the language from <u>Arena</u> but apparently overlooked the introductory clause.

that was given to the jury was based on <u>Arena</u> and related a similar idea: "The driver of a motor vehicle may not rely upon the right-of-way gained as a result of excessive speed or by other negligent act or violation of the law." We thus reject the Samsons' argument that Instruction 6 was erroneous because it was taken from case law.

The Samsons' final contention is that the quoted language from <u>Arena</u> is not applicable to a vehicle-pedestrian collision. However, there is no such express limitation in <u>Arena</u>. The <u>Arena</u> court stated that a driver can "assume that other[s] will observe the rules of the road[,]" while the quoted language states "a person traveling upon a highway has a right to assume that all other persons using the highway will obey the law[.]" <u>Id.</u> at 331, 379 P.2d at 604. Hawai'i law does not omit pedestrians as potential users of "highways," <u>see</u> HRS § 291C-1, and the sections of the HRS that deal with "Pedestrian's Rights and Duties" are under the general category of "Rules of the Road." HRS Chapter 291C, Part VII. Further, "traffic" is statutorily defined as "<u>pedestrians</u>, ridden or herded animals, vehicles, and other conveyances either singly or together while using any highway for purposes of travel." HRS § 291C-1 (2007) (emphasis added). Clearly, pedestrians are part of the tapestry of travelers who utilize the roadways.

Review of the given jury instructions as a whole demonstrates that none of the challenged instructions amount to reversible error.

### 3. Samsons' Proposed "Instruction 12"

The Samsons also argue that the circuit court's failure to give their proposed instruction 12 was erroneous and prejudicial. The proposed instruction read:

> [Plaintiffs' proposed instruction 12] The duty to use reasonable care does not require the same amount of caution from drivers and pedestrians. While drivers and pedestrians must be aware that motor vehicles can cause serious injuries, drivers must use more care to avoid collisions than pedestrians.

19

The Samsons contend that the above language is a verbatim quote from the Judicial Council of California Civil Jury Instruction instructions for Duties of Care for Pedestrians and Drivers and is consistent with other jurisdictions that properly acknowledge the gross disparity in capacity to injure between a driver and a pedestrian.

The Samsons contend that HRS § 291C-74 supports their proposed Instruction 12, but that statute does not expressly place a greater burden of care on drivers or support the language of the proposed instruction. Moreover, another instruction was given that more accurately captures the requirements of HRS § 291C-74.

Further, the Samsons point to no Hawai'i case that holds drivers to a different level of caution or care as a matter of law. A person must exercise ordinary care in conducting all activities. Hulsman v. Hemmeter Dev. Corp., 65 Haw. 58, 68, 647 P.2d 713, 720 (1982). What constitutes ordinary care varies based on the circumstances of each particular case. Doe Parents No. 1 v. State, Dept. of Educ., 100 Hawai'i 34, 82, 58 P.3d 545, 593 (2002) ("[T]he defendant's conduct is measured against what a reasonable and prudent person would . . . have done under [the] circumstances . . . . However, [t]he conduct of [the mythical reasonable and prudent] person will vary with the situation with which he [or she] is confronted because what is reasonable and prudent in the particular circumstances is marked out by the foreseeable range of danger." (citation and internal quotation marks omitted) (some brackets added and some in original)). Hawai'i law does not support the proposition that, as a matter of law, pedestrians can exercise less caution in their actions than drivers. Thus, the circuit court did not err in refusing to give the Samsons' proposed Instruction 12 to the jury.

## II. Conclusion

Based on the foregoing, we affirm the Judgment entered on August 9, 2010, and the "Order Denying Plaintiffs' Motion for Judgment Notwithstanding the Verdict and/or, In the Alternative, for New Trial" entered on September 29, 2010, in the Circuit Court of the First Circuit.

DATED: Honolulu, Hawai'i, March 31, 2014.

On the briefs:

Bruce B. Kim
(Law Offices of Bruce B. Kim)
Ronald Albu
(Albu & Albu)
for Plaintiffs-Appellants

Jonathan L. Ortiz
Wade J. Katano
Jacqueline E. Thurston
(Ortiz & Katano)
for Defendant-Appellee

Chief Judge

Associate Judge

Associate Judge